## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN

GENERAL MOTORS  LLC,
a Delaware limited liability company, and
GM GLOBAL TECHNOLOGY
OPERATIONS LLC,
a Delaware limited liability company

             Plaintiffs,

vs.

AUTEL.US Inc., a New York corporation,
AUTEL INTELLIGENT TECHNOLOGY CO.,
LTD, a Chinese corporation, and Gary DeLuca,
an individual

             Defendants.

_____/

Case No.

Hon.

**JURY DEMAND**

Andrew M. Grove (P48868)
Emily J. Tait (P74708)
HONIGMAN MILLER SCHWARTZ AND COHN LLP
39400 Woodward Ave., Ste. 101
Bloomfield Hills, MI 48304-5151
(248) 566-8300
jgrove@honigman.com
etait@honigman.com

J. Michael Huget (P39150)
HONIGMAN MILLER SCHWARTZ AND COHN LLP
130 South First Street, Fourth Floor
Ann Arbor, MI 48104
(734) 418-4254
mhuget@honigman.com

*Counsel for Plaintiffs*
_____

## COMPLAINT AND JURY DEMAND

Plaintiffs General Motors LLC and GM Global Technology Operations LLC (collectively "General Motors" or "GM"), by their attorneys, bring their Complaint against Defendants Autel.US Inc. ("Autel.US"), Autel Intelligent Technology Co., Ltd. ("Autel ITC"), and Gary DeLuca ("DeLuca") (collectively, "Autel" or "Autel Defendants") as follows:

## NATURE OF THIS ACTION

1.   Autel has entered the vehicle service market with diagnostic and repair tools known as the Autel MaxiDAS® DS708 and the Autel MaxiSys Pro® MS908P (shown below):



Autel markets its tools to compete with a number of similar tools for servicing General Motors and other brand vehicles, including GM's own Tech 2® tool.  But the Autel tools misappropriate a variety of GM's intellectual property—ranging

from trademarks to copyrighted software and trade secrets.  Autel obtained the software and trade secrets from General Motors by improper means, such as circumventing technological protections, breaching software use agreements, and by other means that are not yet fully known by General Motors.  Autel also uses GM's trademarks without permission.

2.     Accordingly, General Motors brings this action against Autel for trademark infringement and unfair competition, copyright infringement, unlawful circumvention under the Digital Millennium Copyright Act, trafficking in illegal means for circumvention under the Digital Millennium Copyright Act, violation of the Computer Fraud and Abuse Act, trade secret misappropriation, breach of contract, and unjust enrichment.  General Motors seeks injunctive relief, monetary damages, statutory damages, attorney fees, costs, and other relief that this Court deems appropriate.

**PARTIES**

3.     Plaintiff General Motors LLC is a Delaware limited liability company having a principal place of business located at 300 Renaissance Center, Detroit, Michigan, 48243.

4.     Plaintiff GM Global Technology Operations LLC is a Delaware limited liability company having a principal place of business located at 300 Renaissance Center, Detroit, Michigan, 48243.

3

5.     Upon information and belief, Defendant Autel.US is a New York corporation having a principal place of business at 116 Spring Road, Huntington, New York, 11743.  Upon information and belief, Autel.US is a wholly-owned subsidiary of Autel ITC.

6.     Upon information and belief, Defendant Autel ITC is a Chinese corporation having a principal place of business at East Gate, 1st floor, SZICC Bldg., Chaguang Road 1089, Xili, Nanshan, Shenzhen, 518055, China and/or at 6th-10th floor, Bldg. B1, Zhiyuan, Xueyuan Road, Xili, Nanshan, Shenzen, 518055, China, and has an office in the United States at 116 Spring Road, Huntington, New York, 11743 and/or at 17008 Evergreen Place – Bldg. C, City of Industry, California, 91745.

7.     Upon information and belief, Hongjing Li is CEO of Autel ITC.  Mr. Li has a residence at 2877 E. Castle Pines Ter., Dublin, California 94568.

8.     Upon information and belief, Gary DeLuca is an individual who serves as Vice President of Autel.US.  Mr. DeLuca resides at 291Vineyard Rd, Halesite, New York, 11743-1258.

## JURISDICTION

9.     Counts I-II of this Complaint are actions under the Lanham Act, 15 U.S.C. §§1051 *et seq*.  This Court has subject matter jurisdiction over these claims pursuant to 28 U.S.C. §§ 1331 and 1338 and Section 39 of the Lanham Act, 15

U.S.C. §1121, which gives this Court jurisdiction over all trademark and unfair competition actions arising under the Lanham Act without regard to the amount in controversy.

10.     Count III of this Complaint arises under the Copyright Act, 17 U.S.C. §§ 101 *et seq*.  This Court has subject matter jurisdiction over this cause of action pursuant to 28 U.S.C. §§ 1331 and 1338.

11.     Counts IV-V of this Complaint arise under the Digital Millennium Copyright Act, 17 U.S.C. § 1201 *et seq*.  This Court has subject matter jurisdiction over this cause of action pursuant to 28 U.S.C. §§ 1331 and 1338.

12.     Count VI of this Complaint arises under the Computer Fraud and Abuse Act, 18 U.S.C. § 1030 *et seq*.  This Court has subject matter jurisdiction over this cause of action under 18 U.S.C. § 1030(g) and 28 U.S.C. § 1331.

13.     This Court has supplemental subject matter jurisdiction over the state law claims set forth in Counts VII-IX of this Complaint pursuant to 28 U.S.C. § 1367 because these claims are so related to the federal claims that they form part of the same case or controversy under Article III of the United States Constitution and derive from a common nucleus of operative facts.

14.     This Court has an independent basis for jurisdiction over all the claims herein in accordance with 28 U.S.C. § 1332 because there is diversity of citizenship between the parties, and the amount in controversy exceeds $75,000.

## FACTS RELATING TO PERSONAL JURISDICTION AND VENUE

15.    This Court has personal jurisdiction over the Autel Defendants.  As further detailed in the allegations in this Complaint, the Autel Defendants have worked separately and together to carry out the unlawful acts reported below.

16.    Autel's illegal conduct intentionally targets and causes injury to General Motors in the Eastern District of Michigan by, *inter alia*, obtaining and abusing user names and passwords to GM's website www.acdelcotds.com (hereinafter, "ACDelco TDS Website"), which is provided by General Motors in this judicial district.  For example, Autel ITC has illegally obtained access to, and made unlawful use of, subscriber user names and passwords that were issued by General Motors to Defendant DeLuca (whether acting individually and/or on behalf of Autel.US), and then used those user names and passwords to make unauthorized access to GM's ACDelco TDS Website.  In this manner, Autel ITC has made unauthorized use of GM's intellectual property, which is located in Michigan, to create, operate, and profit from its own tools.

17.    Autel's illegal conduct intentionally targets and causes injury to General Motors in the Eastern District of Michigan by violating agreements it entered into with General Motors in this district, namely the Terms of Use

6

governing the ACDelco TDS Website and the End User License Agreement.   A complete copy of the Terms of Use is attached as **Exhibit A**.  A complete copy of the End User License Agreement is attached as **Exhibit B.**

18.   Defendant DeLuca intentionally entered into the contracts with General Motors knowing that General Motors is headquartered in Michigan.

19.   Representatives of Defendant Autel ITC intentionally entered into the contracts with General Motors knowing that General Motors is headquartered in Michigan.

20.   Further, General Motors presents Terms of Use to every user of the ACDelco TDS Website every time a user logs in.  A user cannot log in until he agrees to the Terms of Use.  Section 12 of the Terms of Use says: "The laws of the State of Michigan will govern these Terms of Use without giving effect to any principles of conflicts of laws.  ***You and GM agree to submit to the exclusive personal jurisdiction and venue of the state and federal courts located in Wayne County, Michigan, in any legal action or proceeding***."  **Ex. A** (emphasis added)**.**

21.   Defendant DeLuca logged into the ACDelco TDS Website several times, and thereby agreed to the personal jurisdiction and venue provisions.

22.   Representatives of Defendant Autel ITC have also logged into the ACDelco TDS Website from China, and thereby agreed to the personal jurisdiction and venue provisions.

23.    Autel's illegal conduct intentionally targets and causes injury to General Motors in the Eastern District of Michigan by intentionally accessing GM's ACDelco TDS Website, which is hosted on servers in this judicial district, without authorization and/or in excess of authorized access; and by obtaining information, including GM's software and data, with the intent to defraud and cause injury to General Motors and unjustly enrich itself.

24.    Autel's illegal conduct intentionally targets and causes injury to General Motors in the Eastern District of Michigan by hacking and copying General Motors' copyrighted computer programs and data compilations which were created in this judicial district for vehicles manufactured and distributed here.

25.    Autel's illegal conduct intentionally targets and causes injury to General Motors in the Eastern District of Michigan by promoting the accused infringing products in such a way that suggests General Motors is a sponsor, licensor, or partner of Autel.

26.    Upon information and belief, Autel ITC manufactures the accused infringing tools in China for sale and distribution by Autel.US in the United States. Autel ITC is aware of where the tools are to be sold and distributed by Autel.US and, likewise, intends that they be sold and delivered to those locations.  Such products are purposefully directed to customers in the State of Michigan, including customers residing in the Eastern District of Michigan.

27.    For example, in August 2014, U.S. Customs at a courier hub in Kentucky detained a shipment of three Autel MaxiSys® diagnostic tools, which originated in China and was intended for a customer located in Midland, Michigan.

28.    Customs seized this shipment based on Autel's unauthorized use of GM's trademark.

29.    Autel has otherwise sold and promoted for sale its accused infringing tools in Michigan.

30.    Autel's illegal conduct intentionally targets and causes injury to General Motors in the Eastern District of Michigan by entering into contracts to provide technical services and support, software downloads, and other materials to users of Autel tools in this district; instructing users regarding usage of accused infringing products by referencing cars manufactured by General Motors in Michigan; utilizing a distribution network in Michigan whereby CARQUEST® advertises the accused infringing products using Autel ITC's registered trademarks; and marketing, selling, distributing, and providing technical support related to the accused infringing products throughout the United States, including to customers in this district.

31.    Autel.US also owns an interactive website, www.autel.us, which similarly allows members of the public including users from Michigan to register

their Autel products, obtain product information, and download various software updates.

32.    Autel.US acts as the agent for its principal Autel ITC.

33.    Autel ITC is responsible for the wrongful acts caused by Autel.US.

34.    For example, Autel.US acts as Autel ITC's agent for service and warranty issues on Autel ITC's products.

35.    DeLuca acts as the agent for principal Autel.US.

36.    Autel.US is responsible for wrongful acts caused by DeLuca.

37.    Autel ITC also owns and maintains an interactive website, www.auteltech.com, which is accessible to the public, including users from Michigan.  This website advertises and promotes the accused products in a number of ways, including photographs or visual depictions of the products, product comparisons and specifications, and videos.   Through the website, a user (including users in this judicial district) can, among other things, obtain trial downloads, product extensions, and download software updates.  A user can also register his Autel device and program it through the website, creating a contract between Autel ITC and the user.

38.    Autel ITC's website also makes available for download user manuals, including at least one that uses the GM trademark without authorization, permission, or license from General Motors.

39.    Autel ITC's website also features General Motors' GM trademark when advertising a product called the "MaxiFlash GM."

40.    In addition, Autel ITC is listed as the owner and registrant of the following U.S. federal trademark registrations: AUTEL®, MaxiDas®, MaxiSys®, and MaxiSys Pro®.  In obtaining these registrations, Autel has certified that it is engaged in interstate commerce.  Autel has used these marks to advertise, promote, market, and sell the accused infringing Autel products in the United States, including in the state of Michigan.  As the owner and registrant of these marks, Autel ITC has authorized such use.

41.    In *Service Solutions U.S., LLC v. Autel US, Inc.*, *et al.*, Case No. 4:13-cv-10534-TGB-LJM, Dkt. 31, this Court denied Autel ITC's motion to dismiss for alleged lack of personal jurisdiction in Michigan on similar facts.

42.    In *Service Solutions*, Autel.US conceded personal jurisdiction in Michigan.

43.    Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391.

**BACKGROUND ALLEGATIONS SUPPORTING COUNTS I-VIII**

44.    General Motors Corporation was founded in 1908 in Flint, Michigan. General Motors LLC acquired many of the assets of General Motors Corporation, including ownership of trademarks to the General Motors name and logo, in the bankruptcy proceedings of General Motors Corporation in 2009.

45.    General Motors designs, manufactures, markets, and distributes automobiles and automobile parts throughout the world.

46.    General Motors also provides after-sale vehicle products and services including diagnostic and repair products and services.

47.    For decades, General Motors, and before it General Motors Corporation, marketed, sold, promoted, and advertised its automobiles and other products and services using its trademarks "General Motors," "GM," and GM's distinctive GM logo (collectively, "the GM Marks").  As shown below, GM's distinctive logo depicts the letters "GM" within a square:



48.    General Motors owns numerous trademark registrations for the GM Marks in the United States and worldwide.  GM's U.S. trademark registrations include the following:

| Mark | Registration No. and Date | International Class |
|---|---|---|
| **GENERAL MOTORS** | 1,223,115 Jan. 11, 1983 | Class: Int. 006.  Automobiles, Truck and Bus Parts- Namely, Locks and Keys.<br><br>Class: Int. 007.  Automobile, Truck and Bus Parts - Namely, Crankshafts, Crankshaft Bearings, . . . [etc.] |

| | | Class: Int. 009. Automobile, Truck and Bus Parts-Namely, Electric Thermostats, Tachometers, . . . [etc.] Class: Int. 012.  Automobile, Truck and Bus Parts-Namely, Internal Combustion Engines and Parts Thereof . . . [etc.] Class: Int. 017.  Automobile, Truck and Bus Parts-Namely, Non-Metallic Gaskets, . . . [etc.] |
|---|---|---|
| GM | 1,474,088 Jan. 26, 1988 | Class: Int. 12.  Goods: Automobiles, motor trucks, truck tractors, buses, engines therefor and structural parts thereof. |
| GM | 1,476,220 Feb. 9, 1988 | Class: Int. 37.  Services: Repair services for motor vehicles. |
| GM | 4,596,433 Sept. 2, 2014 | Class: Int. 9.  Goods: Motor vehicle diagnostic apparatus and parts thereof including memory cards; plug in electronic tools for vehicle diagnostic testing; electronic recorders for use with motor vehicle computer systems; computers, computer monitors, printers, modems, computer programs for reading, diagnosing and analyzing vehicle parts and vehicle system operations; vehicle based electronic modules for transmitting diagnostic information and vehicle operational status; electronic device to read engine emissions; software for motor vehicle diagnostic apparatus. |

The registration certificates for each of the GM Marks shown in the table above are attached to this Complaint as **Exhibit C.**

49.    General Motors' federal trademark registrations are in full force and effect.  The registrations are active on the Principal Register and constitute *prima*

*facie* evidence of the validity of the respective marks, General Motors' ownership thereof, and General Motors' exclusive right to use the GM Marks throughout the United States.  Further, registration numbers 1,476,220, 1,474,088, and 1,223,115 have each been granted incontestability status by the United States Patent and Trademark Office.

50.   Over more than a century, General Motors, and General Motors Corporation before it, spent billions of dollars, and expended significant effort in marketing, selling, promoting, and advertising its automobiles and other products and services using the GM Marks.   General Motors, and General Motors Corporation before it, also made sales of vehicles in the United States totaling in the trillions of dollars.  As a result, the GM Marks have become widely and favorably known throughout the country.

51.   Indeed, the GM Marks are strong and famous, and the consuming public associates the GM Marks exclusively with General Motors and its affiliates. The GM Marks are an invaluable asset of General Motors, symbolizing its substantial goodwill among consumers and the trade.

52.   Autel has used, and continues to use, the GM Marks—and specifically the GM name and distinctive logo—without permission, authorization, or license from General Motors.

53.     For example, Autel made unauthorized use of GM's name and logo in its user manual for at least its MaxiDAS® DS708 diagnostic tool.  *See* Autel MaxiDas® DS708 User Manual (hereinafter, "Manual"), attached as **Exhibit D**.

54.     This Manual is available for download from Autel ITC's website, http://www.auteltech.com/.

55.     This Manual explains to customers that, "When you turn on the [AUTEL] scan tool, the Home Screen displays options for selecting the software applications in the scan tool as shown below . . . The Home Screen contains a menu of the groups of software installed in the scan tool.  All current software applications are included in the scan tool."  (**Ex. D**, p. 7).

56.     The Manual then provides a picture of the AUTEL MAXIDAS DS708 Home Screen, which displays the GM logo—along with the phrase "GM V3.02" directly below the logo—as shown here:



57.    Autel's use of the GM logo in its Manual creates the false impression that General Motors approves of, sponsors, or is otherwise affiliated with Autel.

58.    Autel's use of the phrase "GM V3.02" immediately under the GM logo furthers this false impression.  Moreover, Autel's use of the phrase "GM V3.02" incorrectly implies that the "software installed in the scan tool" is genuine GM software that Autel has the right to use.

59.    Autel uses the GM trademark and logo within Autel's diagnostic software, again without permission, authorization, or license from General Motors. As the Manual describes, the Home Screen display for the Autel MaxiDAS® DS708 diagnostic tool displays the GM trademark and logo.

60.    The Home Screen display of a more recent version of the Autel diagnostic tool, known as the Autel MaxiSys Pro® MS908P, also displays the GM trademark and logo.

61.    Autel also uses the GM trademark and logo in advertising, promoting, marketing, and selling diagnostic tools.   For example, Autel's promotional materials for its MaxiDas® product prominently displays the image of the GM logo appearing on the Home Screen of that product:

16



*See* MaxiDas DS708 promotional brochure (attached as **Exhibit E**).

62.    Similarly, Autel's promotional materials for its MaxiSys® product prominently display the image of the GM logo appearing on the Home Screen of the Autel MaxiSys® product (as shown in Paragraph 1 of this Complaint).  *See* "Introducing MaxiSys™" promotional brochure (attached as **Exhibit F**).

63.    On information and belief, the Autel promotional materials for the MaxiSys® product referred to in the paragraph above were distributed by Autel to the public in 2013 at industry trade shows, including the Automotive Aftermarket Products Expo ("AAPEX") and the Specialty Equipment Market Association ("SEMA") Show.  In 2014, Autel distributed additional promotional materials for its products that contained the GM logo, for example at industry trade shows like AAPEX and the SEMA Show.

64. Autel has also used the GM trademark and logo in promotional videos showcasing its products, which have been made available to the public online.

65. For example, a video showing the Autel MaxiSys® diagnostic tool reprogramming an electronic control module for a GM vehicle appeared on the website for Autel Scanner at http://www.autelscanner.com/products/Autel-MaxiSys-Pro%28MS908-Pro%29_804.html.

66. This video shows the operation of the Autel MaxiSys® diagnostic tool and prominently features the GM logo while touting the capability of the tool to reprogram GM's vehicle electronic control modules.

67. Autel Scanner's website states that it is located in Shenzen, China and is the "top authorized selling agent/wholesale[r] of Autel diagnostic tools, equipment and accessories." Autel Scanner "cooperat[es] with [Autel] directly" and its technology team is "trained by Autel[.]" *See* http://www.autelscanner.com/about.jsp.

68. This promotional video is also displayed on YouTube's website, *see* http://www.youtube.com/watch?v=Uvd-6ifW1RQ.

69. Autel also uses the GM name in advertising and selling its "MaxiFlash GM" product on its website.

70.     By using the GM name in a manner that looks like it is part of the Autel product name, Autel creates the false impression that General Motors approves of, sponsors, or is otherwise affiliated with Autel.

71.     The image below is taken from Autel ITC's website, www.auteltech.com:



72.     As the above screenshot states, Autel touts the "MaxiFlash GM" as "a full J2534 reprogramming tool for a specific car manufacturer."  The "specific car manufacturer" referred to is General Motors.   In the bullets underneath the red "Features" tab, Autel claims that the "MaxiFlash GM" product provides "[f]aster ECU reprogramming than Tech2 and MDI."

73.     The Tech 2®  and MDI devices are General Motors' diagnostic tools.

74.    Autel also claims that the "MaxiFlash GM" product "[r]eprograms most GM ECM's using the TIS2WEB reprogramming application;" "[p]erforms security key functions;" and "[s]upports all 1996-present GM vehicles."

75.    Autel's unauthorized use of the GM trademark and logo is likely to cause confusion, mistake, or deception as to the source or origin of Autel's goods and services, and is likely to suggest falsely a sponsorship, connection, license, or association of Autel's goods and services with General Motors, and thus constitutes trademark infringement of GM's federally registered marks in violation of Sections 32 and 43(a) of the Lanham Act, 15 U.S.C. § 1114 and § 1125(a).

76.    General Motors has already discovered instances of actual confusion in the marketplace.  For example, aftermarket technicians have indicated their mistaken belief that Autel is approved by, sponsored by, certified by, licensed by, or otherwise affiliated with General Motors because of Autel's use of the GM trademark and logo.

77.    In addition, legitimate makers of competitive diagnostic tools have inquired about Autel's use of the GM trademark and logo and asked if such use is authorized by, approved of, or licensed by General Motors.

78.    Such confusion is unacceptable and unnecessary, and it is causing harm not only to General Motors but also to members of the consuming public, including aftermarket technicians who mistakenly believe that Autel is approved

by, sponsored by, licensed by, certified by, or otherwise affiliated with General Motors, and legitimate makers of competitive diagnostic tools who are placed at a disadvantage by Autel's use of GM's trademark and logo.

79.     General Motors has developed proprietary vehicle servicing software for its paying subscribers for diagnosing, servicing, and repairing GM vehicles. This software is referred to as Techline Information System ("TIS").

80.     General Motors has registered its copyrights in several versions of TIS, as indicated below.

81.     There are several components of TIS.  TIS is a web-based system that runs on General Motors servers, but paying subscribers can obtain a license and download portions of the TIS software onto their local PCs.

82.     Further, paying and licensed subscribers can download software from TIS through their PC for loading onto a hand-held device known as the Tech 2®.

83.     An image of the Tech 2® device is shown below:



84.   GM's Tech 2® device is a tool used by vehicle technicians to read data, such as diagnostic trouble codes, from the vehicle electronic control modules so that they can diagnose vehicle problems and guide repairs.

85.   The Tech 2® device can also be used to conduct service programming events and to reflash or reprogram vehicle electronic control modules.

86.   In such a case, a paying subscriber can obtain a license and download certain files from TIS through their PC for loading onto the Tech 2® device, from which the files can be loaded into an electronic control module on a General Motors vehicle.  These files are often referred to as vehicle calibration or "cal" files.

87.   The vehicle calibration files can include software executable by the electronic control module and data files related to the electronic control module operation.

88.   The Tech 2® software can reside on the Tech 2® tool.  Another version of Tech 2® software is available for running on a PC, and it is known as "Tech2WIN."

89.   Tech2WIN is proprietary to General Motors.

90.   Users of the Tech 2® device and Tech 2Win software include General Motors' dealerships and non-dealership aftermarket technicians.  Such users obtain access to General Motors' TIS and other software via one of two websites:

www.gmglobalconnect.com for GM dealerships, and the ACDelco TDS Website for non-dealership aftermarket technicians ("the GM Websites").

91.   General Motors is the registrant and owner of the ACDelco TDS Website, which provides aftermarket portal access to GM service products, including TIS, the Tech 2®device, and the vehicle calibration files.

92.   In order to access TIS through either GM Website, a user must establish a user account with General Motors.  The user selects a user name and password.  Both of the GM Websites prompt the user to enter the user name and password in order to gain access to TIS.

93.   A login screen for the ACDelco TDS Website is shown below:



94.   General Motors authorizes only users in the United States, Canada, and Australia to have access to the ACDelco TDS Website.  In fact, users cannot log in unless they enter an address based in one of these countries.

95.    As indicated above, and as explained in greater detail below, General Motors requires users to agree to certain Terms of Use (**Exhibit A**) and an End User License Agreement (**Exhibit B**).

96.    The Terms of Use and End User License Agreement include many limitations.  For example, users cannot share passwords or use privileges with others outside their company.  There are also restrictions on copying materials on the website.  There are still other restrictions against reproducing, modifying, adapting, distributing, transmitting, transferring, republishing, compiling or decompiling, reverse engineering, etc. the General Motors intellectual property or the content and information provided by General Motors.

97.    Defendant DeLuca has set up at least seven accounts to use the ACDelco TDS Website.

98.    The user names for these accounts include: garydeluca, mingwchu, gldeluca, Jianrong, Auteltech, Autel123, and GMHelp0116.

99.    Mr. DeLuca established each of these subscriptions using his own name and Autel.US's address and phone number.

100.   General Motors maintains a log of all service and programming events that occur, each of which is traceable to a specific ACDelco user name.

101.   The logs associated with the user names mingwchu, Jianrong, and GMHelp0116 show extensive unauthorized activity from China.

102.   Upon information and belief, Mr. DeLuca has transferred the log-in credentials for those user names to a person (or persons) in China who is/are not authorized.

103.   The logs also indicate an unusually high level of use associated with the above-referenced user names.  In other words, the use associated with the DeLuca user names greatly exceeds what is expected for a legitimate user.

104.   In some months there were thousands of service programming events associated with the DeLuca user names.

105.   The Autel Defendants have made unauthorized use of GM's intellectual property by, *inter alia*, making unlawful access and use of GM's ACDelco TDS Website.

106.   In particular, Autel has stored, copied, and transmitted GM's vehicle calibration software and data to users of at least Autel's MaxiSys Pro® MS908P tool so that these users can reprogram electronic control modules on GM vehicles without having to pay General Motors for such software and data.

107.   As explained in greater detail below, the Autel Defendants have also made unauthorized use of GM's website for purposes of reverse engineering and otherwise using GM's proprietary information for creating their own diagnostic and repair system.

108.   The Autel Defendants have touted in the diagnostic tool industry that the Autel MaxiSys Pro® MS908P tool allows for reprogramming of GM vehicles without owners of this tool having to pay for an ACDelco subscription.

109.   General Motors has received several reports regarding aftermarket technicians who have been able to program GM vehicles with an Autel tool without paying for a subscription.

110.   General Motors has used an Autel tool to reprogram a GM vehicle, and the use did not require an authorized program from General Motors.

111.   Autel's unlawful use of GM's software, firmware, data compilations and other computer files for its vehicle maintenance and repair products and services is causing harm not only to General Motors but also to members of the consuming public, including aftermarket technicians who may mistakenly believe that Autel is approved by, sponsored by, licensed by, certified by, or otherwise affiliated with General Motors, and legitimate makers of competitive diagnostic tools who are placed at a disadvantage by Autel's unlawful use.

## CAUSES OF ACTION

### COUNT I – FEDERAL TRADEMARK INFRINGEMENT OF REGISTERED TRADEMARKS UNDER § 32 OF THE LANHAM ACT, 15 U.S.C. §§1114

112.   General Motors repeats and re-alleges herein each of the foregoing paragraphs.

113.   The GM Marks are strong and famous marks.

114.   In the U.S., the public associates the GM Marks exclusively with General Motors and General Motors' vehicles, products, and services.

115.   This is as a result of the inherent distinctiveness in the GM Marks, as well as the distinctiveness acquired after decades of extensive use of the GM Marks, including advertising, marketing, promoting, and selling vehicles and other products and services bearing the GM Marks in the United States and worldwide.

116.   Autel has used the GM Marks without license, authorization, or approval by General Motors.

117.   Autel is presently aware of, and at all relevant times has been aware of, the GM Marks.

118.   The actions, conduct, and practices of Autel have at all times relevant to this action been willful and knowing in violation of 15 U.S.C. § 1114.

119.   Autel's unauthorized use of the GM Marks or colorable imitations thereof has been, and continues to be done, with the intent to confuse or deceive consumers regarding the source, sponsorship, and/or affiliation of Autel's products and services.

120.   In fact, there have already been several instances of actual confusion in the marketplace.

121.   Accordingly, this is an exceptional case within the meaning of 15 U.S.C. § 1117(a).

122.   General Motors has no adequate remedy at law that will compensate for the continued and irreparable harm it will suffer if Autel's acts are allowed to continue.

123.   General Motors is thus entitled to injunctive relief.

124.   As a direct and proximate result of the actions, conduct, and practices of Autel alleged above, General Motors has been damaged and will continue to be damaged.

## COUNT II – TRADEMARK INFRINGEMENT, FALSE DESIGNATION OF ORIGIN, FALSE ADVERTISING, PASSING OFF AND UNFAIR COMPETITION UNDER § 43(a) OF THE LANHAM ACT, 15 U.S.C. §1125(a)

125.   General Motors repeats and re-alleges herein each of the foregoing paragraphs.

126.   In addition to having trademark rights as a result of its U.S. trademark registrations, General Motors owns common law trademark rights in the distinctive GM Marks.

127.   Autel has violated GM's common law trademark rights by using the GM Marks without authorization.

128.   Autel's unauthorized use of the GM trademark and logo is likely to cause confusion, mistake, or deception as to the source or origin of Autel's goods

and services, and is likely to suggest falsely a sponsorship, connection, license, or association of Autel's goods and services with General Motors.

129.   This constitutes trademark infringement, false designation of origin, passing off, and unfair competition in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125.

130.   Autel's claim, reported above, that its "MaxiFlash GM" product provides "[f]aster ECU reprogramming than Tech2 and MDI" also denigrates General Motors and its Tech2 and MDI products by incorrectly implying that Autel's "MaxiFlash GM" product is superior—and wrongly suggesting that Autel has reprogramming capabilities that it does not actually have.

131.   Autel also represents that its products can operate without licenses and authorized computer files from GM.

132.   This is a false and misleading description of fact that is likely to cause confusion as to Autel's connection with General Motors.

133.   It is also a false and misleading statement in commercial advertising that misrepresents the qualities and characteristics of Autel's products.

134.   The actions, conduct, and practices of Autel described above have at all times relevant to this action been willful and/or knowing.

135.   General Motors has no adequate remedy at law that will compensate for the continued and irreparable harm it will suffer if Autel's acts are allowed to continue.  General Motors is thus entitled to injunctive relief.

136.   As a direct and proximate result of the actions, conduct, and practices of Autel alleged above, General Motors has been damaged and will continue to be damaged.

## COUNT III – COPYRIGHT INFRINGEMENT

137.   General Motors repeats and re-alleges herein each of the foregoing paragraphs.

138.   As alleged above, General Motors owns copyrighted software, including a large number of vehicle calibration files, firmware, data compilations, and other computer files for its vehicle maintenance and repair products and services.

139.   Also as alleged above, General Motors also owns copyrighted software in its TIS system.

140.   As further alleged above, General Motors owns copyrighted software in its Tech 2® system including Tech2Win.

141.   General Motors makes this software available to its authorized, licensed users in some form through its GM Global Connect Website and the ACDelco TDS Website.

142.   General Motors owns the copyrights and corresponding registrations in this software.

143.   For example, General Motors owns U.S. Copyright Registration TXu1-311-704 for "Techline Information Systems TIS 05 5."

144.   General Motors also owns U.S. Copyright Registration TXu1-311-702 for "Techline Information System TIS 11 35 2005 Data CD."

145.   General Motors also owns U.S. Copyright Registration TX 6-956-845 for "Techline TIS v. 07.5 Application/Data 10 2007."

146.   General Motors also owns U.S. Copyright Registration TX 007-924-803 for "Techline Information Systems TIS 14.5."

147.   General Motors also owns U.S. Copyright Registration TX 7-922-501 for "Tech 2 Vehicle Diagnostic Software NAO 33.004."

148.   General Motors also owns Copyright Registration TXu 1-917-502 for "Techline Information System TIS NAO Vehicle Calibration Software 2014."

149.   The copyright registrations are attached as **Exhibit G**.

150.   Autel is infringing these GM copyrights by, among other things, making unauthorized copies of TIS software when Autel accesses the TIS software without authorization.

151.   Autel has accessed the TIS software from China.

152.   Autel improperly accessed the TIS software through the ACDelco TDS Website, and by other means.

153.   Autel Defendants made downloads of certain such software files and data compilations, including downloads to China.

154.   These downloads were unauthorized by General Motors.

155.   General Motors has use logs showing that the Autel Defendants made downloads of certain such software files and data compilations, including downloads to China.

156.    Autel is also infringing these GM copyrights by, among other things, making unauthorized copies of Tech 2® and Tech2Win software when Autel accesses the Tech 2® and Tech2Win software without authorization.

157.   Autel accessed the Tech 2® and Tech2Win software from China.

158.   Autel improperly accessed the Tech 2® and Tech2Win software through the ACDelco TDS Website, and by other means.

159.   General Motors has use logs showing that the Autel Defendants made unauthorized downloads of certain such software files and data compilations, including downloads to China.

160.   Autel is also infringing these GM copyrights by, among other things, making unauthorized copies of vehicle calibration files, which, as alleged above, includes software and data compilations for vehicle reflashing and reprogramming. Autel achieves this through improper access to the ACDelco TDS Website, and by other means.

161.   General Motors has use logs showing that the Autel Defendants made unauthorized downloads of certain such software files and data compilations, including downloads from the United States to China.

162.   The Autel Defendants purchased or otherwise obtained a collection of calibration files on a CD, DVD, or other storage medium, and made unauthorized and illegal copies of some or all of such files.

163.   The Autel Defendants have made and distributed illegal copies of copyrighted calibration files in this district and around the country.

164.   The Autel Defendants attempted to hide their illegal copying of these files by encrypting them.

165.   The Autel Defendants have also infringed by making unauthorized use of many of the files beyond the scope of the applicable End User License

Agreements.  For example, the Autel Defendants used the files for purposes of analysis, study, and reverse engineering.

166.   Still further, and on information and belief, the Autel Defendants have copied security software that functions as a key for unlocking certain computer files stored on vehicles to be serviced.

167.   Autel has also illegally copied General Motors' copyrightable expression embodied in the graphic user interfaces of General Motors' Tech 2® software.

168.   Autel has copied text, menu layouts, formatting, and other protectable elements of the Tech 2® software for its own device.  Autel has even copied certain grammatical and spelling errors, abbreviations, and other features of the Tech 2® screen displays (e.g., illogical ranges for certain engine data parameters), which further reveals Autel's deliberate and willful copying.

169.   A few examples of such copying are shown below with General Motors' Tech 2® screen displays shown on the left and Autel's screen displays shown on the right.










170. The graphic user interfaces are protected by the copyright registrations referenced above.

171.   Many people in the industry and online have commented on Autel's copying of the Tech 2® software.

172.   At least one maker of a competitive diagnostic tool inquired if General Motors approves of Autel's copying because he had invested significant time and resources so as to develop his own text, menus, and layouts to avoid infringing General Motors' intellectual property.

173.   Thus, Autel's copying not only damages General Motors, but causes harm to legitimate competitors.

174.   General Motors' investigation of the Autel Defendants' conduct is ongoing, and General Motors expects to find that they are, individually and/or in concert with one another, copying other of General Motors' copyrighted computer files, possibly by making unauthorized use of the files in the manner of loading them from storage into RAM or other temporary memory for execution and use.

175.   The copyrights in this software are registered in one or more of the above-referenced registrations.

176.   This is a violation of 17 U.S.C. § 101 et seq., and especially § 501 *et seq.*

177.   This is also a willful violation of General Motors' copyrights.

178.   Defendants' conduct has caused and, unless enjoined, will continue to cause, irreparable harm to General Motors.

179.   General Motors is being damaged by this violation and seeks relief.

**COUNT IV – ILLEGAL CIRCUMVENTION OF SECURITY MEASURES UNDER 17 U.S.C. §1201**

180.   General Motors repeats and re-alleges herein each of the foregoing paragraphs.

181.   General Motors utilizes a variety of security measures to control access to its copyrighted computer programs and, in particular, to prevent unauthorized users from gaining access to those computer programs.

182.   For example, General Motors itself, and General Motors Corporation before it, created a large number of copyrightable software, firmware, data compilations and other computer files for its vehicle maintenance and repair products and services.  General Motors keeps these computer files sequestered on a computer system that cannot be accessed except by authorized users having a proper user name and password.

183.   Another security measure used by General Motors is in connection with computer (e.g., calibration) files stored in control modules on vehicles to be serviced.  Those modules are locked and cannot be accessed for re-flashing and re-programming except with the above-mentioned security software that functions as a key.   This security software is available only to authorized and paying subscribers.   The security software is embedded in a larger computer program available through TIS that subscribers use.

184.   On information and belief, the Autel Defendants are defeating this security measure and accessing the modules stored on vehicles to be serviced.  In this way, Defendants are able to replace GM's copyrighted software on the modules with copies of other software and computer files copyrighted by GM.

185.   On information and belief, the Autel Defendants are defeating the security measure either by making an illegal copy of the security software or by otherwise hacking through or circumventing the lock to gain access to the computer files stored on the vehicle.

186.   Accordingly, the Autel Defendants have violated 17 U.S.C. § 1201(a)(1); and this violation is willful.

187.   Autel's conduct has caused and, unless enjoined, will continue to cause, irreparable harm to General Motors.

188.   As the result of the Autel Defendants' unlawful circumvention, General Motors is entitled to actual damages and any additional profits of Defendants pursuant to 17 U.S.C. § 1203(c)(2) or statutory damages pursuant to 17 U.S.C. § 1203(c)(3).

189.   General Motors is entitled to costs, including reasonable attorney's fees pursuant to 17 U.S.C. § 1203(b).

## COUNT V – TRAFFICKING IN ILLEGAL MEANS FOR CIRCUMVENTION OF SECURITY MEASURES UNDER 17 U.S.C. §1201

190.   General Motors repeats and re-alleges herein each of the foregoing paragraphs.

191.   On information and belief, the Autel Defendants are assisting their customers in defeating the security lock on computer files stored on vehicles to be serviced.

192.   The Autel Defendants are accomplishing this by providing their customers with an illegal copy of the key described above, or by providing other means for hacking through or circumventing the lock to gain access to the modules on the vehicle for purposes of re-flashing and re-programming.

193.   General Motors is being damaged by this trafficking.  The trafficking is allowing Autel customers to make unauthorized access to protected copyrighted computer files on vehicles for purposes of using them, replacing them, or updating them with copies of other GM computer files and software protected by copyrights.

194.   Accordingly, the Autel Defendants have violated 17 U.S.C. § 1201(a)(2); and this violation is willful.

195.   The Autel Defendants' conduct has caused and, unless enjoined, will continue to cause, irreparable harm to General Motors.

196.   As the result of the Autel Defendants' unlawful circumvention, General Motors is entitled to actual damages and any additional profits of

Defendants pursuant to 17 U.S.C. § 1203(c)(2) or statutory damages pursuant to 17 U.S.C. § 1203(c)(3).

197.   General Motors is entitled to costs, including reasonable attorney's fees pursuant to 17 U.S.C. § 1203(b).

## COUNT VI - VIOLATION OF FEDERAL COMPUTER FRAUD AND ABUSE ACT, 18 U.S.C. § 1030

198.   General Motors repeats and re-alleges herein each of the foregoing paragraphs.

199.   General Motors' ACDelco TDS Website allows access to certain of General Motors' servers, computers, computer systems, and computer networks, which are "protected computers" within the meaning of 18 U.S.C. § 1030(e)(2).

200.   Upon information and belief, Defendants have acted individually and/or conspired with one another to violate various provisions of the Computer Fraud and Abuse Act.

201.   Defendants have violated the Computer Fraud and Abuse Act, 18 U.S.C. § 1030(a)(2)(C), by intentionally accessing a protected computer used for interstate commerce or communication, without authorization or by exceeding authorized access to such a protected computer, and by obtaining information from such a protected computer.

202.   Defendants have violated the Computer Fraud and Abuse Act, 18 U.S.C. § 1030(a)(4) by knowingly, and with the intent to defraud General Motors,

accessing a protected computer, without authorization or by exceeding authorized access to such a computer, and by means of such conduct furthered the intended fraud and obtained one or more things of value, including but not limited to General Motors' copyrighted software, data, and related trade secrets.

203.   Defendants have violated the Computer Fraud and Abuse Act, 18 U.S.C. § 1030(a)(5)(B) by intentionally accessing a protected computer without authorization, and as a result of such conduct, recklessly causing damage to General Motors.

204.   Defendants have violated the Computer Fraud and Abuse Act, 18 U.S.C. § 1030(a)(5)(C) by intentionally accessing a protected computer without authorization, and as a result of such conduct, causing damage and loss to General Motors.

205.   Defendants have violated the Computer Fraud and Abuse Act, 18 U.S.C. § 1030(a)(6) by knowingly and with intent to defraud, trafficking in user names and passwords through which General Motors' protected computers can be accessed without authorization, and such trafficking affects interstate and/or foreign commerce.

206.   As a result of Defendants' conduct, General Motors has suffered damage and loss in an amount to be proven at trial but, in any event, in an amount

far in excess of $5,000 aggregated over a one-year period as provided for in 18 U.S.C. § 1030(a)(4).

207.  Defendants' unlawful access to and theft from General Motors' computers has caused General Motors irreparable injury.  Unless restrained and enjoined, Defendants will continue to commit such acts.  Remedies at law are not adequate to compensate General Motors for these injuries, entitling General Motors to remedies including injunctive relief as provided by 18 U.S.C. § 1030(g).

## COUNT VII – BREACH OF CONTRACT

208.  General Motors repeats and re-alleges herein each of the foregoing paragraphs.

209.  Users of General Motors' ACDelco TDS Website must agree to an End User License Agreement every time they purchase anything on or through the website.  In pertinent part, the End User License Agreement reads:

> This subscription allows you to use the Service Information and/or Service Software which is the property of General Motors LLC (GM). GM reserves all rights to the service information and/or service software and allows you as a paid subscriber access to the data as long as you agree to use it solely for your own use and you will not copy it or provide it to any person outside of your actual business.

A complete copy of the End User License Agreement is attached as **Exhibit B**.

210.  On information and belief, one or more of the Autel Defendants agreed to this during at least one purchase that they made.

211.   One or more of the Autel Defendants breached this by failing to use the licensed material solely for his or her own use.

212.   One or more of the Autel Defendants breached this by copying licensed material outside the scope of the license.

213.   One or more of the Autel Defendants breached this by providing copies to people outside of his or her actual business.  For example, on information and belief, Defendant DeLuca made available protected materials to Autel ITC, which is outside of his actual business with Autel.US.

214.   Users of General Motors' ACDelco TDS Website must also agree to comply with the Terms of Use every time they log on.  *See* **Exhibit A**.  One or more of the Autel Defendants agreed to the Terms of Use.

215.   One or more of the Autel Defendants breached several terms of the Terms of Use.

216.   For example, in violation of the "Acceptable Use" term in Section 1 and a similar provision in Section 2 f, defendants DeLuca and Autel.US breached by, among other things, misusing the passwords by transferring, providing access to, sharing, or otherwise making available, passwords associated with user names mingwchu, Jianrong, and GMHelp0116 to Autel ITC and/or other individuals located in China for use in China.

217.   Also, in violation of Section 2, one or more of the Autel Defendants violated General Motors' rights in its intellectual property by making illegal copies of its copyright and trade secret-protected files.

218.   Still further in violation of Section 2, one or more of the Autel Defendants breached by performing at least one of the acts prohibited in subsection d, including but not limited to: reproducing, copying, modifying, adapting, distributing, transmitting, transferring, republishing, compiling or decompiling, reverse engineering, etc. the General Motors intellectual property or the content and information provided by General Motors.

219.   General Motors has performed all conditions, covenants, and promises required on its part to be performed in accordance with the End User License Agreement and Terms of Use.

220.   As a direct and proximate result of the Autel Defendants' breach of the End User License Agreement and Terms of Use, the Autel Defendants have caused damage and will continue to cause damage to General Motors in an amount to be proven at trial.

### COUNT VIII – MISAPPROPRIATION OF TRADE SECRETS UNDER THE MICHIGAN UNIFORM TRADE SECRETS ACT

221.   General Motors repeats and re-alleges herein each of the foregoing paragraphs.

222.   General Motors, and General Motors Corporation before it, invested substantial resources to develop the following items to service the vehicles it manufactures: vehicle data, data files, data compilations, data arrays, calibration files, lookup tables, software and firmware (hereinafter "trade secrets.")

223.   These trade secrets have value because they can be used to service millions of vehicles worth hundreds of billions of dollars in an efficient and optimum way.

224.   General Motors' trade secrets are not commonly known by or available to the public.   They derive economic value from not being generally known to others or readily ascertainable by others using proper means.   And they are the subject of reasonable efforts to maintain their secrecy.

225.   General Motors' trade secrets involve software and firmware that required time, skill, and resources to develop, create, select, adapt, or include in General Motors' vehicle servicing systems.

226.   General Motors uses reasonable security measures to maintain the secrecy of its trade secrets.   For example, General Motors takes measures to obfuscate computer files so that they are difficult or impossible to read or decipher.

227.   General Motors also uses a subscription scheme to limit access to its trade secrets to TIS subscribers who a) agree to specific terms and conditions; b) use confidential user names and passwords; and c) pay for the use.

228.   General Motors otherwise keeps its trade secrets secret through various safeguards including employment agreements, confidentiality agreements, and other processes and procedures for limiting access to a limited number of authorized people.  General Motors also employs various forms of encryption and obfuscation so that even its subscribers who use the trade secrets cannot actually see what they are.

229.   General Motors has not authorized the Autel Defendants to use its trade secrets in Autel products.

230.   On information and belief, Defendants, individually and/or in concert with one another, misappropriated General Motors' trade secrets by, *inter alia*, making improper and unauthorized use of Defendant DeLuca's TIS subscriptions, including his user names and passwords to the ACDelco TDS Website.

231.   At the time of Defendants' unauthorized access and use of General Motors' trade secrets, which included copying files, Defendants knew or had reason to know that they had no right to do this, and that they were obtaining General Motors' trade secrets through improper means.

232.   For example, users such as the Autel Defendants are required to acknowledge the Terms of Use every time they log on to the ACDelco Website, and these Terms (especially Section 6: Intellectual Property Rights) remind users that General Motors claims trade secrets in a wide variety of information.

233.   The Autel Defendants also misappropriated trade secrets by analyzing and reverse engineering General Motors' proprietary and copyrighted software.

234.   The Autel Defendants have been unjustly enriched by the improper appropriation, use and/or disclosure of General Motors' trade secrets.

235.   For example, General Motors maintains logs showing that Defendants made repeated unauthorized access to its on-line information.  Much of this access was from China, which is unauthorized according to one or more Terms of Use.

236.   Defendants also downloaded trade secret files and information from the United State to locations in China, which is also unauthorized according to one or more Terms of Use.

237.   Defendants attempted to hide their theft of General Motors' trade secret files and information by encrypting the files and information.

238.   Defendants' conduct has caused and, unless enjoined, will continue to cause, irreparable harm to General Motors.

239.   Defendants' conduct is willful and intentional.

240.   As a result of Defendants' trade secret misappropriation, General Motors is entitled to recover damages both for the actual loss caused by misappropriation and the unjust enrichment caused by misappropriation.  At a minimum, General Motors is entitled to damages caused by misappropriation

measured in terms of a reasonable royalty for Defendants' unauthorized use of General Motors' trade secrets.

241.   General Motors is also being irreparably harmed by the misappropriation, and therefore seeks injunctive relief.

## COUNT IX – UNJUST ENRICHMENT

242.   General Motors repeats and re-alleges herein each of the foregoing paragraphs.

243.   The Autel Defendants have wrongfully benefitted from the development and sale of their competing devices.

244.   The Autel Defendants have not compensated General Motors for the benefit they have received from General Motors.

245.   Under the circumstances, it would be inequitable for the Autel Defendants to accept or retain the benefits conferred upon them without paying General Motors the value of the benefits conferred.

246.   General Motors is entitled to receive the value of the benefits conferred upon the Autel Defendants, and further entitled to the profits of the Autel Defendants resulting therefrom.

## RELIEF REQUESTED

Accordingly, General Motors prays that this Court enter a judgment in its favor and against Autel as follows:

A.    An order finding and declaring that:

     1.    Autel has infringed the GM Marks;

     2.    Autel has engaged in false designation of origin, passing off, and unfair competition;

     3.    Autel has infringed GM's copyrights;

     4.    Autel has engaged in illegal circumvention of copyright security measures;

     5.    Autel has engaged in trafficking in illegal means for circumvention of copyright security measures;

     6.    Autel has violated the Federal Computer Fraud and Abuse Act;

     7.    Autel has misappropriated GM's trade secrets;

     8.    Autel has breached the parties' Agreements; and

     9.    Autel has been unjustly enriched.

B.    An order enjoining Autel, and its employees, agents, officers, directors, shareholders, member, subsidiaries, related companies, affiliates, distributors, dealers, and all persons in active concert or participation with any of them, from:

     1.    infringing GM's trademarks;

2.     engaging in further false designation of origin, false advertising, passing off, and unfair competition with respect to General Motors;

3.     infringing GM's copyrights;

4.     circumventing GM's copyright security measures;

5.     trafficking in illegal means for circumventing GM's copyright security measures;

6.     committing computer fraud and abuse;

7.     misappropriating GM's trade secrets;

8.     breaching further contracts with GM; and

9.     unjustly enriching itself at GM's expense.

C.     An order impounding and destroying Defendants' facilities and products for circumventing and trafficking, and its infringing goods.

D.     An order awarding General Motors:

1.     damages to compensate General Motors for the injuries caused by the Autel Defendants, together with any applicable interest;

2.     statutory and other damages as provided under the Copyright Act;

3.     GM's costs, expenses, and attorney fees as provided under the Copyright Act, the Lanham Act, and the Michigan Uniform Trade Secrets Act;

4.      enhanced damages for willful and intentional infringement;

5.      monetary awards including disgorgement of the Autel Defendants' profits and unjust enrichment as provided for in the Lanham Act and the Michigan Uniform Trade Secrets Act;

6.      any other unjust enrichment remedies; and

7.      all other money to which General Motors may be entitled by law and equity.

E.      Other relief as the Court may deem appropriate.

**JURY DEMAND**

Plaintiff General Motors hereby demands a trial by jury on all issues so triable.

Dated: December 22, 2014         Respectfully submitted;

                                 HONIGMAN MILLER SCHWARTZ AND COHN LLP
                                 Attorneys for Plaintiff


                                 By:  ___s/ Andrew M. Grove_____
                                 Andrew M. Grove (P48868)
                                 Emily J. Tait (P74708)
                                 HONIGMAN MILLER SCHWARTZ AND COHN LLP
                                 39400 Woodward Ave., Ste. 101
                                 Bloomfield Hills, MI 48304-5151
                                 Tel. (248) 566-8300
                                 jgrove@honigman.com
                                 etait@honigman.com

                                 J. Michael Huget (P39150)
                                 HONIGMAN MILLER SCHWARTZ AND COHN LLP
                                 130 South First Street, Fourth Floor
                                 Ann Arbor, MI 48104
                                 (734) 418-4254
                                 mhuget@honigman.com

                                 *Counsel for Plaintiff*